# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES ELLIOTT, on behalf of himself and all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. _____ |
| vs. | ) ) ) | **JURY TRIAL DEMANDED** |
| ESB FINANCIAL, INC., HERBERT S. SKUBA, CHARLOTTE A. ZUSCHLAG, JAMES P. WETZEL, JR., MARIO J. MANNA, WILLIAM B. SALSGIVER AND WESBANCO, INC., | ) ) ) ) ) ) | **CLASS ACTION** |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

## SUMMARY OF THE ACTION

1.      Plaintiff James Elliott, on behalf of himself and all other similarly situated public shareholders of ESB Financial Corporation ("ESBF" or the "Bank"), brings the following Class Action Complaint against the members of the board of directors of ESBF ("Board") seeking equitable relief for their violations of Rule 14(a) promulgated under the Securities Exchange Act of 1934 ("Rule 14(a)") and for breaching their fiduciary duties arising out of the attempt to sell the Company to WesBanco, Inc. ("WesBanco") by means of an unfair process and for an unfair price (the "Proposed Transaction").  Wesbanco is also a party for aiding and abetting the above conduct.  The allegations of this Complaint are based on the knowledge of the Plaintiff and on information and belief, including the investigation of counsel and publicly available information, as to all other matters.

2.      On October 29, 2014, ESBF and WesBanco announced a definitive agreement under which WesBanco will acquire the Company in a transaction involving both cash and stock, pursuant to which ESBF shareholders will receive $1.76 and 0.502 shares of WesBanco common stock in exchange for each share of ESBF they own for a total value of approximately $17.65 per share or $324.4 million in aggregate (the "Proposed Transaction"). Plaintiff contends that the Proposed Transaction is manifestly unfair to ESBF shareholders and the Company's efforts to consummate the Proposed Transaction constitute a violation of the Board's fiduciary duties.

3.     According to the Merger Agreement, WesBanco entered into voting agreements with the ESB director defendants and named executive officers, consisting of Mario J. Manna, William B. Salsgiver, Herbert S. Skuba, James P. Wetzel, Charlotte A. Zuschlag, Charles P. Evanoski, Frank D. Martz, Todd F. Palkovich and Richard E. Canonge.  Specifically, there were 2,406,631 shares of ESB common stock subject to the voting agreements, which represent approximately 13.3% of the outstanding shares of ESB common stock that are now locked up in favor of the Proposed Transaction.

4.     Moreover, in connection with its approval of the Merger Agreement, the Board accelerated the vesting of all of ESBF's outstanding shares of restricted stock and stock option awards. As a result, Charlotte Zuschlag (President and CEO of ESBF) will receive benefits not shared by other stockholders because her unvested restricted shares of ESBF common stock become vested and the unvested portion of her options to purchase shares become immediately exercisable upon consummation of the Proposed Transaction.  In fact, Ms. Zuschlag will earn the following if the deal is consummated:

### Golden Parachute Compensation[1]

| Name | Cash($) (1) | Equity($) (2) | Perquisites/ Benefits($) (3) | Other($) (4) | Total($) (5) |
|---|---|---|---|---|---|
| Charlotte A. Zuschlag | $2,060,000 | $1,024,574 | $   306,467 | $1,211,000 | $4,602,041 |

5.     In addition, Ms. Zuschlag will continue to be employed part time by WesBanco, serving on the WesBanco Board of Directors.  And having negotiated these benefits, Zuschlag and the other directors have already agreed to vote their shares in favor of the Proposed Transaction.

---

[1] Registration Statement at 75.

As a result, the Proposed Transaction is substantially more likely to be approved.

6.      Further, pursuant to the merger agreement, the Board agreed to preclusive deal protection devices that preclude other bidders from making successful competing offers for the Company. Specifically, the Board agreed to: (i) a strict "no-solicitation" provision that prevents the Company from soliciting other potential acquirers; (ii) a provision providing that the Company may only respond to an unsolicited takeover bid if failing to enter into discussions with a potential acquirer would be inconsistent with the directors' fiduciary duties; (iii) a provision requiring that the Company notify WesBanco of any offer to purchase the Company; and (iv) a provision that requires the Company to pay ESBF a termination fee of $11.354 million in order to enter into a transaction with a superior bidder.

7.      In addition, the Registration Statement filed by WesBanco on November 20, 2014 with the SEC on Form S-4 (the "Registration Statement")[2] contains numerous material misstatements and omissions. As explained below, the Registration Statement exposes some details of the highly conflicted sales process, but fails to disclose a myriad of material facts concerning the Proposed Transaction – preventing shareholders from casting an informed vote for or against the Proposed Transaction. For example, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process for the Bank; (b) ESBF's financial projections; and (c) the data and inputs underlying the financial valuation exercises that purport to support the so-called "fairness opinion" provided by its financial advisor, Mufson Howe Hunter & Company LLC ("MHH").

---

[2] The Registration Statement was updated on December 11, 2014 in the Prospectus filed by WesBanco with the SEC. However, for the purposes of the present action, no substantive changes were made from the initial Registration Statement.

8.      Instead of working to maximize shareholder value as required, the Board agreed to hand over the Bank and its future prospects to WesBanco for an unfair price.  The Registration Statement contemplates an aggregate $19.006 per share of ESBF stock (based on the per share closing price of WesBanco common stock for the five trading days following the first public announcement of the merger, which average price was $34.354 per share).  However, the Merger Agreement contains a fixed exchange ratio of 0.502 for the stock portion of the deal, which means that ESBF shareholders will receive 0.502 shares of WesBanco common stock for each of their shares, regardless of WesBanco's stock price at the close of the transaction.

9.      The consideration payable to ESBF shareholders is, therefore, not insulated from fluctuations in WesBanco's stock price, and shareholders are left in the precarious position of not knowing whether the consideration payable to them will decline further. For example, since the announcement of the merger, shares of WesBanco have dropped to as low as $32.72, which would imply an aggregate deal at $18.18, an approximate 5% drop in value.  Thus, any claimed premium may be illusory. If defendants are able to consummate the Proposed Transaction, ESBF's public shareholders will be unable to share in the future success of the Bank. The merger price, therefore, does not reflect ESBF's intrinsic value nor does it reflect the value of the Bank as the target of a full and fair sales process.

10.      The Proposed Transaction is unfair and undervalued for a number of reasons. First, ESBF has been performing well recently.  On April 15, 2014, a press release issued by the Company announced its first quarter 2014 financial results. The Company's annualized return on average assets and average equity were 0.90% and 8.98%, respectively, for the quarter ended March 31, 2014, as compared to 0.78% and 7.62%, respectively at March 31, 2013.  Earnings of

$0.24 per diluted share on net income of $4.3 million for the quarter ended March 31, 2014 represented a 14.3% increase in net income per diluted share as compared to earnings of $0.21 per diluted share on net income of $3.7 million for the quarter ended March 31, 2013.  Net income for the first quarter of 2014, as compared to the first quarter of 2013, increased by $626,000, or 16.9%.  A July 17, 2014 press release announced the Company's second quarter 2014 financial results. The Company's annualized return on average assets and average equity were 0.95% and 9.39%, respectively, for the quarter ended June 30, 2014, compared to 0.82% and 8.04% respectively, for the quarter ended June 30, 2013.  Earnings for the quarter ended June 30, 2014 of $0.26 per diluted share on net income of $4.7 million represented an 18.2% increase in net income per diluted share as compared to earnings of $0.22 per diluted share on net income of $3.9 million for the quarter ended June 30, 2013.  For the six month period ended June 30, 2014, the Company realized earnings of $0.51 per diluted share on net income of $9.0 million compared to earnings of $0.43 per diluted share on net income of $7.6 million for the same period in the prior year, an 18.6% increase in net income per diluted share. A press release dated October 21, 2014 announced the Company's third quarter 2014 financial results. For the third consecutive quarter, earnings per diluted share increased by at least 13%.   For the nine month period ended September 30, 2014, the Company realized earnings of $0.77 per diluted share on net income of $13.6 million as compared to earnings of $0.66 per diluted share on net income of $11.6 million for the same period in the prior year, a 16.7% increase in net income per diluted share. The Company's annualized return on average assets and average equity were 0.93% and 9.11%, respectively, for the nine months ended September 30, 2014, compared to 0.81% and 8.10%, respectively, for the nine months ended September 30, 2013.

11.     In addition, the merger consideration fails to adequately compensate ESBF shareholders for the financial synergies that WesBanco will realize as a result of the merger.  The acquisition will leverage WesBanco's presence in Pittsburgh. With this transaction, WesBanco will have $8.2 billion in total assets and 143 branches in three states when the deal is completed. The transaction is expected to be 3% accretive to WesBanco's earnings in 2015. Thus, the consideration offered in the Proposed Transaction substantially undervalues the Company.

12.     In sum, defendants utilized a defective sales process that was not designed to maximize shareholder value or to protect the interests of ESBF's shareholders, but rather was designed to create material personal benefits and divert the Bank's valuable assets to WesBanco. Each of the defendants has breached his fiduciary duties, and/or has aided and abetted such breaches by, among other things, favoring their own financial interests over those of ESBF and the public shareholders, and disseminating false and misleading information in connection with the shareholder vote. Moreover, Plaintiff and the class are receiving an unfair price in the Proposed Transaction.

13.     Finally, as set forth herein, on November 24, 2014, Plaintiff made a demand on the ESBF Board to take action to remedy the breaches of fiduciary duty described herein (the "Demand").  A copy of the November 21, 2014 letter is attached as Exhibit 1.  On December 10, 2014, the Board, through counsel, responded to the Demand and refused to take the actions requested.  A copy of the Defendants' December 10, 2014 letter is attached as Exhibit 2.  Review of the letter establishes that it is a recital of the positions set forth in the Registration Statement but fails to address the deficiencies set forth herein.  Given the Demand and Defendants' response thereto, Plaintiff has no other option than to file this action seeking remedies for the breaches of

fiduciary duty averred herein.

14.     Plaintiff seeks to enjoin the Proposed Acquisition or, alternatively, to recover damages in the event that the Proposed Acquisition is consummated.

## PARTIES

15.     Plaintiff is and was, at all relevant times, a stockholder of defendant ESBF.

16.     Defendant ESBF operates as a thrift holding company for ESB Bank that provides various retail and commercial financial products and services in Western Pennsylvania in the United States.  It offers various deposit products, including regular savings accounts, checking and money market accounts, certificate accounts, and time deposits. The company also provides single-family and multi-family residential mortgage loans; construction loans; commercial real estate loans; commercial business loans, including credit cards; and consumer loans, such as loans secured by deposit accounts, automobile loans, home equity loans, and secured and unsecured personal loans. As of July 17, 2014, it operated 23 offices in Allegheny, Beaver, Butler, and Lawrence counties in Pennsylvania. ESB Financial Corporation was founded in 1915 and is headquartered in Ellwood City, Pennsylvania.

17.     Defendant Herbert S. Skuba ("Skuba") is Vice Chairman of the Board and of ESB Bank.  He has been a director since 1988.

18.     Defendant Charlotte A. Zuschlag ("Zuschlag") has been President and CEO of the Company since 1991 and of ESB Bank since 1989.  She has been a director since 1988.

19.     Defendant James P. Wetzel, Jr. ("Wetzel") has been a director since 2005.

20.     Defendant Mario J. Manna ("Manna") has been a director since 2001.

21.   Defendant William B. Salsgiver ("Salsgiver") is Chairman of the Board of the Company and ESB Bank and has been a director since 1987.

22.   Defendants Skuba, Zuschlag, Wetzel, Manna and Salsgiver are collectively referred to hereinafter as the "Individual Defendants."

23.   Defendant WesBanco operates as a holding company for WesBanco Bank, Inc. that provides retail banking, corporate banking, personal and corporate trust services, and mortgage banking and insurance services in the Unites States. It operates in two segments, Community Banking, and Trust and Investment Services. As of March 31, 2014, it operated through 120 branches, one loan production office, and 106 ATM machines in West Virginia, Ohio, and Western Pennsylvania. The company was founded in 1968 and is headquartered in Wheeling, West Virginia.

24.   Collectively, ESBF, the Individual Defendants, and WesBanco are referred to herein as the "Defendants."

## JURISDICTION AND VENUE

25.   This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), as this Complaint alleges violations of Rule 14(a). This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

26.   Venue is proper because Defendants reside, are found, have agents, and regularly transact business in this District as provided in 28 U.S.C. § 1391(b) and (c).

27.   This Court has personal jurisdiction over Defendants because they are located in, transacted business in, or had substantial contacts with this District.

**CLASS ACTION ALLEGATIONS**

28.     Plaintiff brings this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all holders of ESBF common stock who are being and will be harmed by Defendants' actions described below ("Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants.

29.     This action is properly maintainable as a class action because, *inter alia*:

a.     The Class is so numerous that joinder of all members is impracticable. As of October 31, 2014 there were 17,839,439 shares of ESBF common stock issued and outstanding. The actual number of public shareholders of ESBF will be ascertained through discovery.

b.      There are questions of law and fact that are common to the Class, including the following:

i)      whether the Individual Defendants have breached their fiduciary duties with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

ii)     whether the Individual Defendants have breached their fiduciary duty to obtain the best price available for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction; and

iii)    whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction complained of

9

herein consummated.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the party opposing the Class.

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## **INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES**

30.      In any situation where the directors of a publicly traded company undertake a transaction that will result in either a change in control or a break-up of the company's assets, the directors have an affirmative fiduciary obligation to act in the best interests of the company's shareholders, including the duty to obtain maximum value under the circumstances. To diligently comply with these duties, the directors may not take any action that:

a.      adversely affects the value provided to the company's shareholders;

b.      will discourage or inhibit alternative offers to purchase control of the company or its assets;

10

    c.      contractually prohibits them from complying with their fiduciary duties; and/or

    d.      will provide the directors, executives or other insiders with preferential treatment at the expense of, separate from, the public shareholders, and place their own pecuniary interests above those interests of the company and its shareholders.

31.    In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of ESBF, are obligated to refrain from:

    a.      participating in any transaction where the directors' or officers' loyalties are divided;

    b.      participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the public shareholders of the company; and/or

    c.      unjustly enriching themselves at the expense or to the detriment of the public shareholders.

32.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Plaintiffs and the other public shareholders of ESBF, including their duties of loyalty, good faith, candor, and due care. As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their ESBF common stock in the Proposed Transaction.

33.    As a result of these breaches of fiduciary duty, ESBF's public shareholders will not receive adequate or fair value for their common stock in the Proposed Transaction.

**DEMAND REFUSED**

34.     On November 24, 2014, Plaintiff made a demand on the ESBF Board to take action to remedy the breaches of fiduciary duty described herein (the "Demand").   A copy of the November 21, 2014 letter is attached as Exhibit 1.

35.     On December 10, 2014, the Board, through counsel, responded to the Demand and refused to take the actions requested.  A copy of the Defendants' December 10, 2014 letter is attached as Exhibit 2.

36.     Review of the letter establishes that it is a primarily a recital of the positions set forth in the Registration Statement but fails to address the deficiencies set forth herein.  However, it is noteworthy that Defendants are providing additional verbiage in the December 10 letter than appears in the Registration Statement.  For example, with respect to the revised indications of interest From Company B and Company C, the Registration Statement provides, "[t]he revised indication of interest submitted by WesBanco had an implied value per share to ESB shareholders that was higher than the other two revised indications of interest."  (Registration Statement at 50.) However, the December 10th letter adds one significant word to the description of the revised indications of interest that is not in the Registration Statement – the December 10th letter states that "[t]he revised indication of interest submitted by WesBanco had an implied value per share to ESB shareholders that was *materially* higher than the other two revised indications of interest." (Emphasis added.) (*See* Exhibit 2 at p. 3.)  Plaintiff does not concede that the addition of the word material is sufficient on its own; however, it puts a fine point on the fact that Defendants' themselves recognize the Registration Statement is inadequate and are providing backfill in the response to Plaintiff's demand.

37.     Given the Demand and Defendants' response thereto, Plaintiff has no other option than to file this action seeking remedies for the breaches of fiduciary duty averred herein.

## FURTHER SUBSTANTIVE ALLEGATIONS

**I.     Background**

38.     Founded in 1915, ESBF operates as a thrift holding company for ESB Bank that provides various retail and commercial financial products and services in Western Pennsylvania in the United States.  It offers various deposit products, including regular savings accounts, checking and money market accounts, certificate accounts, and time deposits. The company also provides single-family and multi-family residential mortgage loans; construction loans; commercial real estate loans; commercial business loans, including credit cards; and consumer loans, such as loans secured by deposit accounts, automobile loans, home equity loans, and secured and unsecured personal loans. As of July 17, 2014, it operated 23 offices in Allegheny, Beaver, Butler, and Lawrence counties in Pennsylvania.

39.     ESBF has been performing well recently. On April 15, 2014, a press release issued by the Company announced its first quarter 2014 financial results. The Company's annualized return on average assets and average equity were 0.90% and 8.98%, respectively, for the quarter ended March 31, 2014, as compared to 0.78% and 7.62%, respectively at March 31, 2013. Earnings of $0.24 per diluted share on net income of $4.3 million for the quarter ended March 31, 2014 represented a 14.3% increase in net income per diluted share as compared to earnings of $0.21 per diluted share on net income of $3.7 million for the quarter ended March 31, 2013.  Net income for the first quarter of 2014, as compared to the first quarter of 2013, increased by $626,000, or 16.9%.

40.     The positive results continued into 2014.  A July 17, 2014 press release announced the Company's second quarter 2014 financial results. The Company's annualized return on average assets and average equity were 0.95% and 9.39%, respectively, for the quarter ended June 30, 2014, compared to 0.82% and 8.04% respectively, for the quarter ended June 30, 2013. Earnings for the quarter ended June 30, 2014 of $0.26 per diluted share on net income of $4.7 million represented an 18.2% increase in net income per diluted share as compared to earnings of $0.22 per diluted share on net income of $3.9 million for the quarter ended June 30, 2013.  For the six month period ended June 30, 2014, the Company realized earnings of $0.51 per diluted share on net income of $9.0 million compared to earnings of $0.43 per diluted share on net income of $7.6 million for the same period in the prior year, an 18.6% increase in net income per diluted share.

41.     Similarly, a press release dated October 21, 2014 announced the Company's third quarter 2014 financial results. For the third consecutive quarter, earnings per diluted share increased by at least 13%.  For the nine month period ended September 30, 2014, the Company realized earnings of $0.77 per diluted share on net income of $13.6 million as compared to earnings of $0.66 per diluted share on net income of $11.6 million for the same period in the prior year, a 16.7% increase in net income per diluted share. The Company's annualized return on average assets and average equity were 0.93% and 9.11%, respectively, for the nine months ended September 30, 2014, compared to 0.81% and 8.10%, respectively, for the nine months ended September 30, 2013.

42.     Moreover, both companies expressly acknowledged in the press release that the Proposed Transaction is calculated to benefit WesBanco.  Specifically, the press release provides, in pertinent part, as follows:

> Todd F. Clossin, President and Chief Executive Officer of WesBanco, stated, "This transaction leverages our existing presence in the Pittsburgh market, expands our franchise, strengthens our leadership position and builds on our previous momentum in Pittsburgh and Western Pennsylvania. With the acquisition of ESB, WesBanco will become a top 10 player in this important market. ESB is a well-established institution with a very strong franchise and exceptional customer service culture. We believe we can provide customers of those offices with a broader array of banking services, including expanded commercial and mortgage lending capabilities as well as leverage our trust and wealth management services."

43.     Thus, ESBF is poised for growth and its prospects have continued to improve. Rather than permitting its shares to trade freely and continue to benefit from ESBF's opportunities for growth, the Board has acted for the benefit of itself and WesBanco, and to the detriment of ESBF's shareholders, by entering into the Proposed Transaction.

## II.     The Proposed Transaction

44.     According to the Registration Statement, in early June 2014, during its strategic review, the Board and ESB management decided to engage an investment banker to analyze strategic alternatives available to the Company.  MHH was one of two investment banks invited to participate and provide an overview of the financial institution industry in ESBF's market area, its assessment of merger and acquisition activity in the region and on a nationwide basis, its assessment of potential business combination transactions that might be available to ESB and to MHH's qualifications and abilities to assist the board of directors in analyzing ESBF's strategic options, including a possible merger or strategic combination with another institution.

45.     By the end of July, MHH had developed a list of 12 banking institutions that might be interested in a transaction with the Company.  The Registration Statement fails to disclose, however, the criteria used to determine the list of 12 and what "information" (Registration Statement at 48) MHH used to compile the list.

46.     In August 2014, during the strategic review process, Defendant Zuschlag had dinner with senior management from WesBanco, as well as its Chariman, James Gardill.  The Registration Statement blithely notes she discussed the "general business climate in the region, among other matters," (Registration Statement at 48) but fails to disclose if the parties discussed a possible strategic combination, particularly given that ESBF and WesBanco had a history of business dealings and ESBF was a loan customer of WesBanco.  The Registration fails to disclose the nature of the business dealings and/or the dollar amount of the existing loan relationship between the two parties.

47.     During the first half of August, MHH contacted the 12 institutions on behalf of ESB. Ten of the twelve, including WesBanco, executed non-disclosure agreements ("NDAs") and received information relating to ESB's operations and financial performance.  The Registration Statement fails to disclose the reason(s) provided by the two institutions that indicated they had no interest in pursuing a transaction.  Moreover, after receiving information about the Company, 5 of the 10 remaining entities dropped out.  The Registration Statement, however, fails to disclose the reasons provided to ESBF (or MHH) for backing out.

48.     In early September, WesBanco submitted a non-binding indication of interest. According to the Registration Statement, "WesBanco's initial indication of interest proposed a transaction consisting of 80% of WesBanco common stock with a fixed exchange ratio and 20%

cash, with an implied value to be within a range of $16.50 to $17.00 per share of ESB common stock, or approximately $302.4 million to $312.0 million in the aggregate."

49.     At the same time, Companies B and C submitted initial indications of interest for proposed transactions with implied values in a range of $16.00 to $17.00 per ESB share, while Companies D and E proposed transactions with an implied value of less than $16.00 per share of ESB common stock.  The Registration Statement failed to disclose the specific indications of interest for each of Company B, C, D and E.

50.     The Board decided to jettison discussions with Company D and Company E based on "their initial indication of interest" (Registration Statement at 49); however, without providing how far under $16.00 a share each Company's indication of interest had been, it is difficult to assess the reasonableness of the Board's actions.

51.     On October 2, 2014, after further due diligence by WesBanco and Companies B and C, ESBF received revised indications of interest.  According to the Registration Statement, "WesBanco's revised indication of interest reflected a proposed transaction consisting of 85% WesBanco common stock, with a fixed exchange ratio, and 15% cash, with an implied value of $17.65 per share of ESB common stock. MHH advised the ESB board of directors that WesBanco was considering increasing the stock component to 90% of the merger consideration."  The Registration Statement fails to provide the indications of interest from Company B and Company C.  Rather, it vaguely states that the "revised indication of interest submitted by WesBanco had an implied value per share to ESB shareholders that was higher than the other two revised indications of interest."  Registration Statement at 50.  As a result, ESBF jettisoned any chance of

maximizing stockholder value by dumping Company B and Company C from the process and focusing exclusively on WesBanco.

52.     Significantly, the Registration Statement barely addresses what, if any, negotiations took place between October 2, 2014 and October 29, 2014 regarding the terms of the merger agreement.  In particular, there is no discussion if the parties addressed placing a collar on the transaction so to protect ESBF stockholders if WesBanco stock dropped in value after the announcement of the deal.

53.     Instead, on October 29, 2014, WesBanco and ESBF issued a joint press release announcing the Proposed Transaction:

> WesBanco, Inc. ("WesBanco") (WSBC) and ESB Financial Corporation ("ESB") (ESBF) jointly announced today that they have executed a definitive Agreement and Plan of Merger providing for the merger of ESB with and into WesBanco. James C. Gardill, Chairman of the Board, and Todd F. Clossin, President & CEO, of WesBanco and William B. Salsgiver, Chairman of the Board, and Charlotte A. Zuschlag, President & CEO, of ESB, made the joint announcement.

> Under the terms of the Agreement and Plan of Merger, which has been unanimously approved by the board of directors of both companies, WesBanco will exchange a combination of its common stock and cash for ESB common stock. ESB shareholders will receive 0.502 shares of WesBanco common stock and cash in the amount of $1.76 per share for each share of ESB common stock for a total value of approximately $17.65 per share or $324.4 million in aggregate. The exchange ratio is based on the average closing price of WesBanco common stock of $31.66 over the 15 day period ending on October 27, 2014. The merger is expected to qualify as a tax-free reorganization. The transaction values ESB at a price to tangible book value per share of 191% and a price to last twelve months earnings ended September 30, 2014 of 18.1 times.

> Todd F. Clossin, President and Chief Executive Officer of WesBanco, stated, "This transaction leverages our existing presence in the Pittsburgh market, expands our franchise, strengthens our leadership position and builds on our previous momentum in Pittsburgh and Western Pennsylvania. With the acquisition of ESB, WesBanco will become a top 10 player in this important market. ESB is a well-established institution with a very strong franchise and exceptional customer

service culture. We believe we can provide customers of those offices with a broader array of banking services, including expanded commercial and mortgage lending capabilities as well as leverage our trust and wealth management services."

The transaction is expected to be 3% accretive to earnings in 2015, excluding one-time charges, and 9-10% accretive to earnings in 2016 and beyond. Earn back of tangible book value dilution is anticipated to be 2.4 years using the incremental retained earnings approach and approximately 5.4 years using the cross-over approach, including all one-time charges. The acquisition is subject to the approvals of the appropriate banking regulatory authorities and the approval vote of the shareholders of both ESB and WesBanco. It is expected that the transaction should be completed in the first or second quarter of 2015.

"We are excited about the opportunity to partner with ESB in building a stronger franchise in the Pittsburgh and Western Pennsylvania region. ESB is an outstanding community-based financial institution which mirrors the commitment and culture of our community banking organization. Together we can create a regional, service-based financial institution in a robust and expanding market," said WesBanco Chairman of the Board, James C. Gardill.

William B. Salsgiver, Chairman of the Board of ESB stated, "We are excited to be joining with WesBanco and believe that the combination will benefit our shareholders, customers and the communities we serve." Mr. Salsgiver continued, "I would personally like to recognize and thank Charlotte Zuschlag and the entire management team for their leadership over the past 25 plus years. This transaction with WesBanco will take us to the next level."

Charlotte A. Zuschlag, President and Chief Executive Officer of ESB and ESB Bank, said, "We are thrilled to be joining with WesBanco, which is a premier regional banking franchise. We are excited about the new products and services that will be available to our customers and the communities we serve. I believe that this partnership will be a home run for the entire ESB family."

At September 30, 2014, WesBanco had consolidated assets of approximately $6.3 billion, deposits of $5.1 billion, loans of $4.0 billion and shareholders' equity of $789 million.

At September 30, 2014, ESB had consolidated assets of approximately $1.9 billion, deposits of $1.3 billion, loans of $713 million and shareholders' equity of $205 million.

When the transaction is consummated, the combination of the two banking companies will create a bank with approximately $8.2 billion in total assets

providing banking services through 143 branch locations and 128 ATM's in three states. The transaction will expand WesBanco's franchise by 23 offices located in the Pittsburgh MSA and Lawrence County, western Pennsylvania.

As a result of the merger, WesBanco will add to its board Ms. Zuschlag and another director of ESB or ESB Bank to be mutually agreed upon. All of the directors and named executive officers of ESB have entered into voting agreements with WesBanco pursuant to which they have agreed to vote their shares in favor of the transaction. The approximate four to six month time period leading to the consummation of the merger has officials of both organizations optimistic that organizing around customer service and product delivery can be effected with as little employee disruption as possible.

Financial advisors involved in the transaction were FBR Capital Markets & Co., representing WesBanco, and Mufson Howe Hunter & Company, LLC, representing ESB.

Legal representation in the transaction include Phillips Gardill Kaiser & Altmeyer PLC, Wheeling, WV, and K&L Gates LLP, Pittsburgh, PA, for WesBanco, and Silver, Freedman, Taff & Tiernan LLP, Washington, D.C., for ESB.

## III.  <u>WesBanco Buys the Support of ESBF's Directors and Executive Officers</u>

54.    The Registration Statement also reveals that certain ESBF directors and officers will be entitled to receive substantial benefits because of the full vesting of stock options and restricted stock at the effective time of the Merger.  Significantly, Defendant Zuschlag stands to reap personal financial gains not shared with the Company's public stockholders should the Proposed Transaction be consummated because her unvested restricted shares of ESBF common stock become vested and the unvested portion of her option to purchase shares becomes immediately exercisable upon consummation of the Proposed Transaction.  In fact, Ms. Zuschlag will earn the following if the deal is consummated:

**Golden Parachute Compensation**

| Name | Cash($) (1) | Equity($) (2) | Perquisites/ Benefits($) (3) | Other($) (4) | Total($) (5) |
|------|-------------|---------------|------------------------------|--------------|--------------|

| | | | | |
|---|---|---|---|---|
| **Charlotte A. Zuschlag** | $2,060,000 | $1,024,574 | $   306,467 | $1,211,000 | $4,602,041 |

In addition, Ms. Zuschlag will continue to be employed part time by WesBanco, serving on the WesBanco Board of Directors.  Indeed, even though she is entering into an agreement with WesBanco to serve on its Board, as set forth above under "Other," Defendant Zuschlag will still reap over $1 million dollars from a non-competition payout from WesBanco.

55.    In exchange, each of the members of the Board and ESBF's management entered into a voting Agreement. The voting agreements provide that ESBF's Board and management will vote all of their shares of ESBF stock: (a) in favor of the adoption of the Merger Agreement; and (b) against any alternative business combination involving ESBF. Although the Board members were obligated to maximize shareholder value, they somehow managed to negotiate voting agreements for their own interests. Notably, the Registration Statement provides no discussion as to how or why these voting agreements were negotiated and executed.

56.    Thus, ESBF insiders stand to gain millions of dollars as a result of the Proposed Transaction. In contrast, the interests of ESBF's common stockholders will receive a price that does not reflect the true value of ESBF.

## IV.    Deal Protection Devices

57.    The Board took unreasonable steps to ensure consummation of a deal with WesBanco to the detriment of ESBF shareholders when they agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait d'accompli* and ensure that no competing offers will emerge for the Company.

58.     Pursuant to the Merger Agreement, the Board agreed to preclusive deal protection devices that preclude other bidders from making successful competing offers for the Company. Specifically, the Board agreed to: (i) a strict "no-solicitation" provision that prevents the Company from soliciting other potential acquirers; (ii) a provision providing that the Company may only respond to an unsolicited takeover bid if failing to enter into discussions with a potential acquirer would be inconsistent with the directors' fiduciary duties; and (iii) a provision requiring that the Company notify WesBanco of any offer to purchase the Company.

59.     Thus, the Merger Agreement prohibits ESBF from soliciting, encouraging, initiating or facilitating, inquiries or negotiations with respect to any Acquisition Proposal but permits the Board to consider an unsolicited proposal only if it constitutes or is reasonably calculated to lead to a "Superior Proposal" as defined in the Merger Agreement. However, even the Board's consideration of unsolicited proposal is restricted: prior to considering any such proposal, the Board must determine, in consultation with its financial advisors, that its fiduciary duties require it to consider the proposal. Thus, the Board cannot consider alternative proposals even if it reasonably believes that any such proposal would be beneficial to shareholders

60.     The Board further reduced the possibility of maximizing shareholder value by agreeing to a termination fee that will all but ensure that no competing offer will be forthcoming. For example, the Merger Agreement contains a termination fee provision that requires ESBF to pay $11.354 million to WesBanco if the Merger Agreement is terminated under certain circumstances – an amount that will make the Bank that much more expensive to acquire for potential purchasers, while resulting in a corresponding decline in the amount of consideration payable to ESBF's shareholders.

V.    **Defendants Breached Their Fiduciary Duties by Filing a Materially False and Misleading Registration Statement**

61.    It is critical that shareholders receive complete and accurate information about the Proposed Transaction. To date, defendants have failed to provide ESBF shareholders with that information. As set forth in more detail below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process for ESBF; (b) ESBF's financial projections; and (c) the data and inputs underlying the financial valuation exercises that purport to support the so-called "fairness opinion" provided by MHH.

A.    **The Registration Statement Fails to Adequately Describe the Process the Resulted in the Proposed Transaction**

62.    The process here is seriously flawed, as the Board breached its fiduciary duties to ensure a fair process. The Registration Statement fails to fully and fairly disclose certain material information concerning the Proposed Transaction, including (among other things):

a.    The criteria used to determine the list of 12 potential strategic partners and what "information" (Registration Statement at 48) MHH used to compile the list.

b.    At the August 2014 dinner between Zuschlag and WesBanco's Chairman and President, if the parties discussed a possible strategic combination, particularly given that ESBF and WesBanco had a history of business dealings and ESBF was a loan customer of WesBanco. The Registration Statement further fails to disclose the nature of the business dealings and/or the dollar amount of the existing loan relationship between the two parties.

c.    The specific indications of interest from each of Company B, C, D and E provided to the Company in early September 2014.

23

d.      The Board decided to jettison discussions with Company D and Company E based on "their initial indication of interest" (Registration Statement at 49); however, without providing how far under $16.00 a share each Company's indication of interest had been, it is difficult to assess the reasonableness of the Board's actions.

e.      On October 2, 2014, ESBF received revised indications of interest. According to the Registration Statement, "WesBanco's revised indication of interest reflected a proposed transaction consisting of 85% WesBanco common stock, with a fixed exchange ratio, and 15% cash, with an implied value of $17.65 per share of ESB common stock. MHH advised the ESB board of directors that WesBanco was considering increasing the stock component to 90% of the merger consideration."   The Registration Statement fails to provide the indications of interest from Company B and Company C.   Rather, it vaguely states that the "revised indication of interest submitted by WesBanco had an implied value per share to ESB shareholders that was higher than the other two revised indications of interest." Registration Statement at 50.

f.      Whether the parties addressed placing a collar on the transaction so to protect ESBF stockholders if WesBanco stock dropped in value after the announcement of the deal and if not, why.

g.      Whether the NDAs entered into by WesBanco, Company B, Company C, Company D, Company E and Company F included a standstill agreement.

h.      Why the Registration Statement uses $19.006 to value the transaction as of the day the deal was announced and used the average of *5 trading days* of WesBanco stock, while the press release announcing the deal states that the exchange ratio is based on the average closing price of WesBanco common stock of $31.66 over the *15 day period* ending on October 27, 2014.

**B.      The Registration Statement Fails to Provide Any Information Concerning ESBF's Financial Projections**

63.      The Registration Statement fails to provide *any* material information concerning financial projections provided by ESBF's management, reviewed with ESBF and relied upon by MHH in its analyses.   In addition, the Registration Statement should likewise provide the so-called "WSBC Projections for ESBF," which purport to be an extrapolation by WesBanco through December 31, 2019 of ESBF's projections for the years 2014-2016.

**D.      The Registration Statement Fails to Disclose Sufficient Details Concerning MHH's Fairness Opinion**

64.      In the Registration Statement, MHH describes its fairness opinion and the various valuation analyses it performed to render its opinion. However, MHH's description fails to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinion.

65.      For example, the Registration Statement does not disclose material details concerning the analyses performed MHH in connection with the Proposed Transaction, including (among other things):

a.      <u>Selected Comparable Companies Analysis (Registration Statement at 65-</u>

67)

    i.     The financial metrics and multiples observed for each of the selected comparable companies.

    ii.    The criteria used by MHH to select the companies used in this analysis.

    iii.   Whether MHH conducted any type of benchmarking analysis for ESBF in relation to the selected companies.

    iv.   The conclusions drawn by MHH from this analysis, including how this analysis factored into MHH's opinion that the Proposed Transaction was fair.

b.    Financial Impact Analysis (Registration Statement at 70)

    i.     How accretive is the merger expected to be to WesBanco's earnings per share in each of the years 2015 – 2016?

    ii.    In which years is the merger expected to be dilutive to WesBanco's tangible book value per share, and how dilutive to this metrics is the merger expected to be?

    iii.   The definition of "well capitalized capital ratios" used by MHH in its analysis.

c.    Discounted Dividend Analysis (Registration Statement at 70)

    i.     The basis for the selection of the ranges of terminal forward earnings multiples and projected tangible book value multiples (130% to 190%) in its analysis including how MHH derived 2019 PTBV.

ii.     The specific inputs and assumptions used to determine the discount rate range of 10.0% to 16.0% used in this analysis.

iii.    The implied perpetuity growth rate ranges resulting from this analysis.

d.      Recent Transactions Analysis (Registration Statement at 56)

i.      The actual financial metrics and multiples for each of the selected transactions observed in the analysis (alternatively, at a minimum, a full statistical summary of the data set including Minimum, Maximum, and Mean)

ii.     Whether MHH conducted any type of benchmarking analysis for ESBF in relation to the selected transactions.

iii.    The conclusions drawn by MHH from this analysis, including how this analysis factored into MHH's opinion that the Proposed Transaction was fair.

## VI.    **The Board Agrees to Sell ESBF to WesBanco for Inadequate Consideration**

66.     Under the Merger Agreement, holders of ESBF common stock will receive $1.76 and 0.502 shares of WesBanco common stock in exchange for each share of ESBF they own for a total value of approximately $17.65 per share or $324.4 million in aggregate.  The exchange ratio is based on the average closing price of WesBanco common stock of $31.66 over the **15 day period** ending on October 27, 2014.  The Registration Statement also uses $19.006 to value the transaction as of the day the deal was announced based on the average of **5 trading days** of WesBanco stock.

67.     However, the Merger Agreement does not include protections to ensure that the consideration payable to shareholders will remain within a range of reasonableness. In a conventional transaction that contemplates stock of the acquiring company as a whole or part of the consideration offered in the Proposed Transaction, the parties often negotiate and implement a "floor" on the value of the consideration payable to shareholders, which establishes the lowest possible price payable. Such transactions also often include a "collar," which establishes parameters that attempt to minimize the impact of stock price fluctuations on the value of the consideration payable to shareholders. The Merger Agreement contains none of these protections. Rather, the Merger Agreement contains a fixed exchange ratio of 0.502, which means that ESBF shareholders will receive 0.502 shares of WesBanco common stock for each of their shares, regardless of WesBanco's stock price at the close of the transaction.

68.     Thus, the consideration payable to ESBF shareholders is not insulated from fluctuations in WesBanco's stock price, and shareholders are left in the precarious position of not knowing whether the consideration payable to them will decline further. Significantly, as set forth herein, since the announcement of the merger, shares of WesBanco have dropped to as low as $32.74 and further fluctuation could virtually wipe out any premium for ESBF shareholders.

69.     Thus, the consideration offered in the Proposed Transaction is grossly inadequate. ESBF, if properly exposed to the market for corporate control, would bring a price materially in excess of the amount offered in the Proposed Transaction.

70.     Shareholders have a right to receive consideration that accurately accounts for ESBF's performance and bright prospects. However, the Board entered into the deal in violation of the duties owed ESBF's public shareholders.

### FIRST CAUSE OF ACTION
**(Against the Individual Defendants for Breach of Fiduciary Duties)**

71.     Plaintiff repeats and realleges each allegation set forth herein.

72.     The Individual Defendants have violated fiduciary duties owed to public shareholders of ESBF.

73.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants have failed to obtain for ESBF's public shareholders the highest value available for ESBF in the marketplace.

74.     As demonstrated by the allegations above, the Individual Defendants breached their fiduciary duties owed to the shareholders of ESBF because they failed to take steps to maximize the value of ESBF to its public shareholders in a change of control transaction.

75.     As a result of the actions of defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive the highest available value for their equity interest in ESBF. Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

76.     Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from immediate and irreparable injury, which the Individual Defendants' actions threaten to

inflict.

## SECOND CAUSE OF ACTION
### (Against ESBF and WesBanco for Aiding and
### Abetting the Individual Defendants' Breaches of Fiduciary Duty)

77.     Plaintiff repeats and realleges each allegation set forth herein.

78.     ESBF and WesBanco have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to ESBF's public shareholders, and have participated in such breaches of fiduciary duties.

79.     ESBF and WesBanco knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein. In so doing, ESBF and WesBanco rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties.

80.     Plaintiff has no adequate remedy at law.

## THIRD CAUSE OF ACTION

### (Violations of Rule 14(a) Promulgated Under The Securities Exchange Act Of 1934)

81.     Plaintiff repeats and realleges each allegation set forth herein.

82.     Defendants disseminated the false and misleading Registration Statement specified above which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.   The Registration Statement violates Rule 14a because it omits material facts necessary to make the statements made not misleading, as set forth, *supra*.   If Plaintiff and the other members of the Class were in possession of the facts that have been concealed and omitted by Defendants, Plaintiff and other members of the Class would be materially less likely to vote their shares in favor of the Proposed

Transaction.

83.     In the exercise of reasonable care, Defendants knew or should have known that the Registration Statement was materially false and misleading and would be relied upon by ESBF shareholders in determining how to vote their shares in the upcoming vote on the Merger Agreement.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands relief in his favor and in favor of the Class and against Defendants as follows:

A.     Declaring that this action is properly maintainable as a Class action and certifying Plaintiff as Class representative;

B.     Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until ESBF adopts and implements a procedure or process to obtain a merger agreement providing the best available terms for shareholders;

C.     Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiffs and the Class rescissory damages;

D.     Directing the Individual Defendants to account to Plaintiff and the Class for all damages suffered as a result of the wrongdoing;

E.     Awarding compensatory damages in favor of Plaintiff against all Defendants for all losses and damages suffered as a result of Defendants' wrongdoing alleged herein, in an amount to be determined at trial, together with interest thereon

F.     Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and experts' fees; and

      G.     Granting such other and further equitable relief as this Court may deem just and

proper.

DATED: December 15, 2014              LAW OFFICE OF ALFRED G. YATES,
                                       JR. P.C.


                                       By: _/s/ Alfred G. Yates, Jr._
                                       Alfred G. Yates, Jr. (PA17419)
                                       Gerald L. Rutledge (PA62027)
                                       519 Allegheny Building
                                       429 Forbes Avenue
                                       Pittsburgh, PA 15219
                                       Tel: (412) 391-5164
                                       Fax: (412) 471-1033
                                       yateslaw@aol.com

                                     BRODSKY & SMITH, LLC
                                     Evan J. Smith
                                     Marc L. Ackerman
                                     Two Bala Plaza, Suite 510
                                     Bala Cynwyd, PA 19004
                                     (610) 667-6200

                                     *Attorneys For Plaintiff*